Good morning, Your Honor. May it please the Court, Daniel Snyder appearing for the appellant Robert Gray. I'd like to reserve four minutes, please. As the Court knows, this is another arbitration case. This arises in the employment context. In this particular case, there are three assignments of error that the petitioner has raised. Substantive unconscionability, procedural unconscionability, and failure of consideration. In this particular case, the petitioner is an employee who brought claims against his employer under Oregon civil rights laws, protecting employees, and the employer removed the case to the U.S. District Court and then said there was a mutual agreement to arbitrate in his personnel file and was unaware that he had signed a mutual agreement to arbitrate. There were affidavits both from the employee and from his manager who described a scenario in which about five days after he was employed, he was asked to sign a number of documents and was told to hurry up and get out on the road. He worked for Rent-A-Center West, comma, Inc., and the mutual agreement to arbitrate which the District Court enforced when it dismissed the case was signed with a company called Rent-A-Center, Inc., which apparently is a parent company. There is sort of an irregularity here because, in addition to the circumstances under which my client signed these documents, because one of the dates on the documents is not his. It's a forgery. It's dated November 17th, 2004. And the mere fact that there are two of these — Well, didn't the trial judge find or the District Court found that that wasn't really a relevant problem, that the date didn't matter, that two documents were the same? Well, I think what is indicative of, Your Honor, is the fact that what my client and what his manager said was true, and that is there were just a number of documents that were sort of pushed at him about five days after he started working there, and that he really was not given any opportunity to review the documents. In fact, the manager — Well, the employees usually aren't. But don't waste all of your time on procedural unconscionability because you have more meat than a sandwich on the other. I agree. On the issue of substantive due process, Your Honor, as the Court knows from having reviewed the mutual agreements to arbitrate, it's very clear that the employer and the employee are required to share all of the costs of the arbitration. And this poses an extreme burden on the employee. And there has been some effort on behalf of the employer to try and say, well, if this would be performed, it would be somewhat different. But the Vasquez-Lopez case, which everyone's been talking about at least this morning thus far, indicates that — and this is citing Best v. United States — that unconscionability applies to contract terms rather than contract performance. So we're — really, we're looking at what the agreement said at the time it was entered into. I'd also like to discuss the failure of consideration aspect of this case. In this particular case, the district court found that there was consideration in the agreement because there was continued employment. I'd like to point out — The Oregon rule is that you don't need any other — you don't need any other consideration if you continue to work knowing about the — there might be a question of notice, but if a person continues to work knowing about the change in the conditions in the handbook or whatever they use, then that's a condition. That is a consideration for it. I have some concerns about that. The employer cited the court to the Yartsov decision. And when I read the Yartsov decision, really what I read that as being not standing for that proposition, but rather for the proposition that the employer was claiming that there was no contract of employment. So it's not as clear to me that that is an absolute rule in Oregon. What I thought was more interesting on the consideration issue — I hope the court does as well, and I'm not wasting my time — was that in the agreement, it says that the consideration for entering into this agreement is the promises to arbitrate. It's not continued employment. Thank you, Your Honor. I'd like to reserve my time, if at all possible, unless there's other questions. No, no, no. It's fine. Thank you. May it please the Court, good morning. I'm Rob Freedman from Rent Center West. There is one provision in the arbitration agreement that plaintiff is attacking as being unconscionable. That is the cost provision. The cost provision addresses fee splitting, but also within the same provision, it expressly adopts the law of the jurisdiction. And it expressly adopts the law of the jurisdiction at the time of execution. Appellant's argument that somehow adopting the law of the jurisdiction is unconscionable is without explanation. Well, he was making, what, $12 an hour? And in his affidavit, he states that the cost of arbitration would be $7,500. And that he just couldn't handle that at $12 an hour, and that's one of his main arguments for un-unconscionability. Well, Your Honor, there's one sentence in his affidavit that discusses his issue of not being able to pay. It's a conclusory. He does not explain where he's wrong. It's unrebutted. I'm sorry? Unrebutted. Your Honor, it is rebutted because we have put into evidence the arbitration agreement, which adopts the terms of AAA or JAMS, and both the AAA and JAMS rules which we've attached prohibit fee splitting. Additionally, within the cost provision … I don't understand. You mean you put a provision in the contract that you have fee splitting, and then you say in the contract it's prohibited? Your Honor, the provision says fee splitting unless otherwise prohibited by law. So it is not simply fee splitting as we saw in some other cases like Vasquez-Lopez. It's an either-or situation. It is fee splitting. However, if the law of the jurisdiction, and this was the case at the time the arbitration agreement was executed, if the law of the jurisdiction does not allow for fee splitting, then fee splitting will not be allowed. Moreover, the AAA rules and the JAMS rules, which are incorporated by reference within the arbitration agreement, prohibits fee splitting. So to a large degree, this is an imaginary problem. There will be no fee splitting by operation of the AAA and the JAMS rules. In the Sprague case recently before the Court of Appeals in Oregon, 2007 case, the Court acknowledged that an arbitration agreement that adopts the rules of an administrator such as AAA or JAMS is acceptable, and if those rules render the agreement conscionable, it's okay. That's exactly what we have here. But I don't understand how you can say one specific thing in the contract and then say we adopt rules which say the opposite, which are general rules, and you think that controls over the specific rule you put into the contract? Well, Your Honor, I want to draw attention to the fact that the cost provision, the fees provision, does not simply say fee splitting. It has a safety valve in there expressly adopting the law of the jurisdiction. And the law of the jurisdiction in Oregon, if plaintiff makes an adequate showing and bears his burden to show a substantial likelihood of incurring cost, then fee splitting could be unconscionable. In this case, the appellant, plaintiff, has not met his burden to show that the fee splitting would be unconscionable. By putting in one sentence with the conclusory $7,500, it is the exact type of speculation. In fact, Your Honor, the language he uses is we are financially unable to pay the $7,500 in arbitration expenses expected under the American Arbitration Association. So first of all, he brings American arbitration up correctly because it's incorporated in the agreement, but the language expected is speculative. And the United States Supreme Court and Motzinger and Sprague and Vasquez have made it very, very clear, speculation as to cost. So how much does it cost to go to arbitration? $150 under the AAA rules. He will pay $150, period, under AAA, under JAMS. How much does the arbitrator charge? Rent-a-Center pays that, Your Honor. Who? Rent-a-Center. Appellee, Rent-a-Center, the employer, will pay that pursuant to the AAA rules. So what do you pay? That's not what it says in the agreement, though. It says, the company and I shall equally share any filing fees and the cost of the arbitrator's fee. But, Your Honor, two sentences down, it states, if the law of the jurisdiction requires another dealing with payments, then such law of the jurisdiction shall be followed to make it conscionable. And what allocates So how's this guy supposed to figure all this out? Well, Your Honor, if he looks at it, Your Honor, the AAA rules make it clear that he will not have to pay any of the fees. Rent-a-Center will pay all of the fees. The JAMS rules say the same thing. Well, why don't you just put that in the arbitration provision? Well, we do incorporate the AAA rules. Well, I don't mean by incorporation. Just put them in there until they see it. It's not in the arbitration fees and costs section. No, Your Honor, it's not in the agreement. These arbitrators that I see, they get $10,000 a day. Your Honor, if that's I don't know there's $10,000 a day, but whatever it is, Rent-a-Center is going to pay it pursuant to the AAA and the JAMS rules. Those are former California Supreme Court justices. They get $15,000. Your Honor, they're very lucky to get that. But at any rate, whatever the cost is, pursuant to the AAA and the JAMS rules, Rent-a-Center is going to pay it. Appellant is not. Does the record show that the district court was aware that the actual cost to the plaintiff in this case would have been $150? No, Your Honor, that is not in the record. So how do we know that from reading these documents? Your Honor, in the supplemental excerpts, the district court is aware that the AAA rules and the JAMS rules were adopted. The district court may not be aware, however, that the fees are capped at $150 under AAA. When they put in an affidavit saying what the cost would be, $7,500, is there put in a response affidavit that says, no, it won't be, that'll be $150, that's all the cost will be, but there's no response affidavit? Well, Your Honor, there is not a response affidavit. At the same time, the arbitration agreement speaks for itself and adopts the law of the jurisdiction and adopts the AAA and JAMS rules, and there is an affidavit proving up the arbitration agreement. There's another basis, Your Honor. That's great for a truck driver. He's supposed to figure all this out. He's going to look at it and he's going to, like this man did, it's a lot of money, you know, what's he going to do? But, Your Honor, I'm making $12 an hour. It is a lot of money, but at the same time, Your Honor, he is not going to pay these fees. There's another basis. But he doesn't know that, does he? Why don't you just put it in your arbitration agreement? All it's ever going to cost you is $150 and not a penny more. Now, when he says it's going to cost me $7,500, all you have to do is file an affidavit and say, no, it won't cost you $150. Well, Your Honor, we did prove up the arbitration agreement. We do have the rules there. Additionally, Your Honor, there's another basis. The arbitration agreement has a construction cause which allows any offensive provisions to be severed out. In this case, he has attacked one provision in the agreement as being substantially unconscionable, the cost provision. It would be very simple and be consistent with Oregon federal law, which strongly favors arbitration, to simply sever that clause out. We maintain that's not even necessary because on its face, it is an either-or. Contracts, agreements routinely have language that says, here is a rule. However, if the law requires otherwise, so be it. We will follow the law. So we think on its face, it's not unconscionable because it adopts the law. The cases that are out there, primarily from other jurisdictions, address one provision only allowing for fee splitting. In contrast, this provision has fee splitting but provides for an alternative. Also, as we stated, it allows for AAA and JAMS rules. I don't see any argument on severability in your brief. Your Honor, it is in the brief. We did put severability, and I believe. Well, I'm just looking at the table of contents, so. It may not be in the table of contents, but it is on page 22 of our brief, Your Honor. And we maintain that severability is an option so that this arbitration can go forward. Your Honor, the effect could be given to the arbitration agreement of orienting courts and Federal courts' urge. However, we don't think there needs to be any severance because on its face, it does defer to the court the law of the jurisdiction. Your Honor, there is an alternative basis as well to affirm the district court, and that is the arbitration agreement as written gives the arbitrator the power to decide issues of enforceability, formation, et cetera. Therefore, the parties agreed in the arbitration agreement that the arbitrator can make that decision as well. Well, that same argument was made in Motzinger, and they said it wasn't raised below, and therefore, they wouldn't consider it. In your case, you never raised it before the magistrate judge's decision, and then you put it in the footnote. We raised it after the plaintiff asked the district court not to adopt the magistrate's deference. So we did respond that it was in the record. In a footnote? In a footnote, Your Honor. That's not usually the way you raise a major issue. Your Honor, I understand, but we think the major issue is that the agreement is not unconscionable. It's conscionable as written, as the district court held. Thank you. May it please the Court. Your Honor, with regard to the provisions of the American Arbitration Association, which were submitted by Rena Center in its brief, the Court should please note that these are not part of the original excerpt of record. They are marked with ADD and then numbers. To my best knowledge, and I hope I'm not saying the right thing, I don't think that these provisions were submitted below. Furthermore, if you look at the provisions, ADD 007 talks about the filing fee that a claim in which someone's making a prayer for $325,000, like my client, the initial filing fee is $4,250, and the case service fee is $1,750. Read that again. Pardon me, sir? Say that again. ADD 007, it's attached to Rena Center's brief. Were you saying there was a claim against your client? I'm so sorry, Your Honor. Did you say there was a claim against your client? No, what I'm saying is that the American Arbitration rules that counsel submitted have been marked as ADD and that they talk about the filing fee for this as being quite extensive. And what I'm saying to you, Your Honor, is that this is further support for my client's belief that he would be exposed to substantial expenses if he had to participate in the arbitration. The next thing is, counsel says, well, that the particular Oregon law could require a different procedure other than the fee splitting that is set forth in the contract. But counsel hasn't suggested that Oregon law would require something else. So what I think this keeps on boiling down to is that, assuming that my client somehow knew about this contract, he would have been presented with a contract that said that he was going to be exposed to equal sharing of fees and costs and that that is a lot of money for him to consider. On the issue of the severability, we did address that in our reply brief. Because I was raised in, I asked counsel whether it was raised in his brief. He said, yes, on page 22. Again, it's mentioned only in a footnote. Yes, but I think that we did respond to it, or we did reply to it. And that's the only thing that I was trying to point out to the court. And what I have to say about that issue is that we shouldn't allow employers to present employees with substantively unconscionable agreements and then say, well, we can just whittle away anything that's illegal or objectionable later on, because it does have a chilling effect on the employee. Thank you. Unless there's other further questions, you're on. All right. Thank you. Thank you. The matter will stand submitted.
judges: Goodwin, Pregerson, Reinhardt